IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE L. BOWBIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07 C 0260 |
| v. | ) | |
| | ) | |
| BULKMATIC TRANSPORT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Jacqueline L. Bowbin brought the present three-count Complaint against her former employer, Defendant Bulkmatic Transport, Inc., alleging gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*  Bowbin also alleges violations of the Federal Equal Pay Act , 29 U.S.C. § 206(d) – which is part of the Fair Labor Standards Act – and the Illinois Equal Pay Act, 820 ILCS 112/1 *et seq.*  Before the Court is Bulkmatic's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c).  For the following reasons, the Court grants Bulkmatic's summary judgment motion in its entirety.

## BACKGROUND

### I.       Northern District of Illinois Local Rule 56.1 Statements

When determining summary judgment motions, the Court derives the background facts from the parties' Local Rule 56.1 statements.  Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence."  *Bordelon v. Chicago Sch. Reform Bd. of*

*Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). A litigant's failure to respond to a Local Rule 56.1 statement results in the Court admitting the uncontroverted statement as true. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). Because Bowbin failed to respond to Bulkmatic's Rule 56.1 Statement of Facts, the Court admits Bulkmatic's Statement of Facts as true.

## II.     Relevant Facts

### A.     Parties

Bulkmatic is a bulk transportation company that transports dry bulk foods and plastics. (R. 27-1, Def.'s Rule 56.1 Stmt. Facts ¶ 3.) In November 2000, Bowbin began working for Bulkmatic as a Terminal Leader at Bulkmatic's Argo Summit, Illinois facility. (*Id.* ¶ 4.) As Terminal Leader, Bowbin was responsible for supervising the dispatcher, billing supervisors, and drivers, as well as reviewing revenue reports. (*Id.*) Bowbin worked as a Terminal Leader for about a year, and then, per her agreement with Bulkmatic at the time of her hire, Bowbin moved into a sales representative role in February 2002. (*Id.* ¶ 5.)

### B.     Job Responsibilities for Bulkmatic's Sales Representatives

Bowbin and all of the other sales representatives reported to Larry Smith, Senior Vice President of Sales. (*Id.* ¶ 6.) The responsibilities for sales representatives at Bulkmatic were divided by product type. (*Id.* ¶ 8.) Bowbin worked on edible accounts and was responsible for sales of bulk transportation of sweeteners and sugar products. (*Id.*) In her sales position, Bowbin was responsible for bringing in new business, maintaining existing business, negotiating rates as directed by her supervisors, responding to customer service issues, and helping the operations group develop customer solutions. (*Id.* ¶ 6.) In May 2005, the Vice President of

Sales – Edibles, Cornelius Parks, resigned and Bowbin assumed about eleven of his flour accounts. (*Id*. ¶ 8.) A few months later, Bowbin assumed five more of Parks' flour accounts. (*Id*.)

### C.    Bulkmatic's Other Business Areas

Besides food-grade transportation, Bulkmatic transports bulk plastic by truck. (*Id*. ¶ 12.) To transport plastics, the Bulkmatic sales representative must understand plastics and related transportation issues. (*Id*.) Bulkmatic is also engaged in the international transportation of plastics and minerals via container. (*Id*. ¶ 14.) Shipping by container requires a special bulk container delivery system using a chassis, rather than Bulkmatic's typical truck shipment. (*Id*.) To effect international sales, it is necessary for the representative to travel abroad several times a year and understand international shipping rules, tariffs, and the appropriate international shipping ports with regard to their capabilities for accepting certain vessels. (*Id*.) Bulkmatic also operates rail-truck transfer sites, which requires a background and understanding in the federal rules and regulations under the Federal Railroad Administrative Act and the Occupational Safety and Health Administration. (*Id*. ¶¶ 16, 17.)

### D.    Bowbin's Salary & Salary Increases

As with all sales representatives, Larry Smith determined Bowbin's salary that Bulkmatic's President ultimately approved. (*Id*. ¶ 20.) In determining compensation levels, Smith considered many factors, including experience in the industry and in a sales capacity, current compensation, the market rate for similar positions, compensation of other employees in similar positions, level of responsibility, the applicant's level of skill, the amount of travel required, interaction with internal employees and external customers and venders, and

educational background. (*Id*. ¶ 21.)

Bowbin began her employment as a Terminal Leader with an annual salary of $59.000. (*Id*. ¶ 22.) Bowbin testified that at that time, the $59,000 base salary was the highest salary she had ever earned. (*Id*. ¶ 23.) After Bowbin transferred into sales in August 2002, her annual salary increased to $70,000. (*Id*. ¶ 24.) In February 2004, Bowbin received a raise to approximately $78,000 annually. (*Id*. ¶ 25.) In December 2004, Bowbin received another raise to approximately $81,000 a year. (*Id*. ¶ 26.) On May 30, 2005, Bowbin received a raise to $87,464 per year, which was her base salary until she resigned in August 2006. (*Id.* ¶ 27.)

At the time Bowbin received her $6,000 raise in 2005, Bowbin testified that Larry Smith informed her that "next year between your bonus and your salary, you should be into six figures easy." (*Id*. ¶ 28.) According to Bowbin, however, she did not ask Smith for any further details. (*Id*.) In May 2006, Bowbin asked Smith if it were "safe" to say that there would be no raises or bonuses for any sales representatives in 2006, to which Smith confirmed. (*Id*. ¶ 29.) In August 2006, Bowbin resigned from her position at Bulkmatic to work for one of Bulkmatic's competitors. (*Id*. ¶¶ 30, 38.) In the time period between February 2002 through her resignation, Bowbin received four salary increases totaling approximately $27,000. (*Id*.)

### E.    Bulkmatic's Phantom Stock Plan

Bulkmatic has a phantom stock plan in which the Board of Directors picks the participants. (*Id*. ¶ 36.) Under the plan, instead of receiving a full bonus, an employee receives phantom stock in Bulkmatic, which is a privately-held company. (*Id*.) The phantom stock vested over a five year period. (*Id*.) If Bulkmatic does not earn a profit in a given year, the phantom stock does not grow in value. (*Id*.) Employees who have phantom stock are not

entitled to cash out the stock if they leave Bulkmatic for a competitor. (*Id.* ¶ 37.) Also, employees are not entitled to the value of any phantom stock that has not vested. (*Id.*)

### F. Bowbin's Employment History & Education

Bowbin attended a two-year college after graduating from high school, but never received a certificate or degree. (*Id.* ¶ 40.) Further, Bowbin did not take any sales training or sales seminars. (*Id.*) Bowbin's sales job at Bulkmatic was her first position in which sales was her primary responsibility. (*Id.* ¶ 41.) Prior to her employment at Bulkmatic, Bowbin had about ten years experience in bulk tank business and had five years experience working with food-grade bulk shippers. (*Id.* ¶ 42.)

### G. Bowbin's EEOC Charge

On October 5, 2006, Bowbin filed a charge with the EEOC alleging that although she was told she would receive a pay increase and bonus in 2006, she did not receive either. (Def.'s Stmt. Facts, Ex. B, EEOC Charge.) She also alleges that in or around July 2006 she learned that Bulkmatic paid her male co-workers substantially higher salaries than Bulkmatic paid her. (*Id.*) Further, Bowbin states that she resigned on August 21, 2006 and that Bulkmatic replaced her with a male employee whose salary was substantially higher than her salary. (*Id.*) Based on the allegations in her EEOC charge, Bowbin asserted that Bulkmatic discriminated against her based on her gender in violation of Title VII and the Equal Pay Act. (*Id.*) Bowbin received her EEOC Right to Sue Letter on November 2, 2006. (R. 1-1, Compl. ¶ 3.) Bowbin filed the present Complaint on January 16, 2007.

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby*, 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)).

## ANALYSIS

I. **Title VII – Gender Discrimination Claim (Count I)**

Bulkmatic contends that Bowbin's Title VII gender discrimination claim is time-barred. Under Title VII, a plaintiff must file an employment discrimination charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *see also National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 104-05, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). "An 'unlawful employment practice' includes various discrete acts such as 'termination, failure to promote, denial of transfer, or refusal to hire.'" *Roney v. Illinois Dep't of Transp.,* 474 F.3d 455, 460 (7th Cir. 2007); 42 U.S.C. § 2000e-2(a). "If a plaintiff does not file a charge concerning a discrete act of discriminatory conduct within

300 days of its occurrence, his claim is time-barred and he may not recover." *Id.*; *see also Ledbetter v. Goodyear Tire & Rubber Co.*, ___U.S. ___, 127 S.Ct. 2162, 2169, 167 L.Ed.2d 982 (2007) ("The EEOC charging period is triggered when a discrete unlawful practice takes place."). Bowbin filed her EEOC Charge on October 5, 2006. Therefore, any discrete acts of discriminatory conduct that occurred more than 300 days prior to this date, or before December 9, 2005, cannot be the basis of Bowbin's Title VII gender discrimination claim. *See Roney,* 474 F.3d at 460.

Here, Bowbin contends that discriminatory conduct occurred in May 2006 because she did not receive a raise or a bonus even though her supervisor, Larry Smith, told her she would get a raise or bonus the previous year. Based on the undisputed record, however, Bulkmatic did not give any raises or bonuses in 2006. Accordingly, Bowbin's claim that she was denied a raise or bonus in May 2006 due to her gender is not an adverse employment action because Bulkmatic did not give any of its sales representatives raises or bonuses in 2006. *See, e.g., Hildebrandt v. Illinois Dep't of Natural Res.,* 347 F.3d 1014, 1025 n.7 (7th Cir. 2003); *Todd v. Dominicks Finer Food,* No. 00 C 7846, 2002 WL 31875473, at *5 (N.D. Ill. Dec. 23, 2002).

Bowbin also contends that a decision to award "phantom stock" was made in May 2006, but that Bulkmatic did not award her phantom stock due to her gender. There is no evidence in the record, however, that Bulkmatic awarded phantom stock to anyone in May 2006. Again, because there is no proof in the record that anyone was awarded phantom stock in May 2006, Bowbin cannot rely on the alleged phantom stock award as an unlawful employment action to support her Title VII gender discrimination claim. In short, there is no evidence in the record that a discrete act of discriminatory conduct occurred during the 300 day period prior to

7

Bowbin's filing of her EEOC Charge on October 5, 2006.[1]

Finally, although Title VII's limitations period is subject to the doctrines of equitable tolling and estoppel, Bowbin makes no such arguments. *See Roney,* 474 F.3d at 461 n.2; *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 860 (7th Cir. 2005). Accordingly, Bowbin's Title VII gender discrimination claim is time-barred.

## II.     Federal and Illinois Equal Pay Acts Claims (Counts II & III)

In Counts II and III of her Complaint, Bowbin alleges violations of the Illinois and Federal Equal Pay Acts. In her response brief, however, Bowbin fails to make ***any*** arguments in support of her Equal Pay Act claims. Further, Bowbin fails to set forth ***any*** evidence in support of her Equal Pay Act Claims. From the absence of any discussion concerning her Equal Pay Act claims, it appears that Bowbin has abandoned these claims. *See Steen v. Myers,* 486 F.3d 1017, 1020 (7th Cir. 2007) (citing *Luellen v. City of E. Chicago,* 350 F.3d 604, 612 (7th Cir. 2003). Indeed, by failing to raise any arguments concerning her Equal Pay Act claims in her brief opposing summary judgment, Bowbin has lost the opportunity to argue her claims to this Court and to the Seventh Circuit. *See Witte v. Wisconsin Dep't of Corr.,* 434 F.3d 1031, 1038 (7th Cir. 2006). In an abundance of caution, however, the Court will address Bowbin's Equal Pay Act claims.

To prove a violation of the Equal Pay Act, Bowbin must first establish a prima facie case by showing that: (1) she was compensated differently than a male employee; (2) she and the

---

[1] Bowbin does not argue that she was constructively discharged based on her August 2006 resignation. *See Boumehdi v. Plastag Holdings, LLC,* 489 F.3d 781, 789 (7th Cir. 2007) ("To establish a claim for constructive discharge, a plaintiff must prove that unlawful discrimination made her working conditions so intolerable that a reasonable person would be forced to resign.").

male employee performed equal work requiring equal skill, effort, and responsibility; and (3) they performed their work under similar conditions. *See Boumehdi v. Plastag Holdings,* LLC, 489 F.3d 781, 793 (7th Cir. 2007); *Merillat v. Metal Spinners, Inc.,* 470 F.3d 685, 695 (7th Cir. 2006). If Bowbin establishes a prima facie case, the burden shifts to Bulkmatic to establish one of the four statutory defenses. *Id.* at 697. The statutory defenses are triggered when the rate of pay is determined "pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any factor other than sex." *Id.* (citing 29 U.S.C. § 206(d)(1)); *see also* 820 ILCS 112/10(a).[2]

## A.     Prima Facie Case

Bulkmatic does not dispute the first element of Bowbin's prima facie case, namely, that Bulkmatic paid certain male employees higher wages than it paid Bowbin. The Court thus turns to the second prima facie element to examine whether there is a genuine issue of material fact that these male employees' positions required substantially similar skills, effort, and responsibilities as Bowbin's position. *See Merillat*, 470 F.3d at 695. To determine if these positions are equal, the Court's first inquiry focuses on whether the jobs have a common core of tasks. *See id.; see also Cullen v. Indiana Univ. Bd. of Tr.,* 338 F.3d 693, 698 (7th Cir. 2003). If so, the Court must determine whether any additional tasks make the jobs substantially different

---

[2]  Bulkmatic asserts that because the Illinois Equal Pay Act mirrors the Federal Equal Pay Act, the Court should apply the same standards to both claims. The Court agrees. Similar to the Federal Equal Pay Act, the Illinois Equal Pay Act prohibits employers from discriminating between employees based on sex by paying lower wages for the same or substantially similar work, requiring equal skill, effort, and responsibility, and which are performed under similar conditions, except when such payment is made under a seniority system, merit system, a system that measures earnings by quantity or quality of production, or similar differential not based on sex. *See* 820 ILCS 112/10(a); 29 U.S.C. § 206(d). Further, there is no legal authority suggesting that the two statutes should be analyzed differently.

in terms of skill, effort, or responsibility to justify the pay disparity. *Cullen,* 338 F.3d at 699. In making this determination, the Court looks to factors such as experience, training, education, and ability. *Id.* (quoting 29 C.F.R. § 1620.15(a)); *Merillat*, 470 F.3d at 695. The Court thus turns to the male comparators, who worked with Bowbin during the relevant time period.

### B. Bowbin's Male Colleagues

#### 1. Bruce Boardman

It is undisputed that Bruce Boardman is the Vice President of Sales and the President of Bulkmatic Rail Services, Inc. (Defs.' Stmt. Facts ¶ 44.) In this position, Boardman is responsible for negotiating contracts for bulk transportation of plastics, as well as Bulkmatic's rail services. (*Id.*) Also, pursuant to his position, Boardman is required to have an understanding of every aspect of rail-to-truck transfer operations. (*Id.* ¶¶ 17, 46.) Boardman is further responsible for learning and understanding the rules and regulations of the Federal Railroad Administration ("FRA") and the Occupational Safety and Health Administration ("OSHA"). (*Id.*) Boardman has a Master's Degree in Industrial Relations. (*Id.* ¶ 43.)

On the other hand, Bowbin's sales position in food-grade transportation services did not require the same skill set, responsibilities, or effort. (*Id.* ¶¶ 8, 18.) Specifically, she was not required to understand the various rules and regulations under the FRA or OSHA with respect to rail services. (*Id.* ¶ 18.) Further, Bowbin did not have the skills to negotiate rates without the help from her superiors. (*Id.* ¶ 7.) Meanwhile, Bowbin's job responsibilities included bringing in new business, maintaining existing business, responding to customer service issues, and helping the operations group develop customer solutions. (*Id.* ¶ 6.) Finally, Bowbin does not have a college or masters degree. (*Id.* ¶ 40.) Viewing the evidence and all reasonable inferences

in Bowbin's favor, she has failed to raise a genuine issue of material fact that Boardman's position and her position had a common core of tasks, *see Merillat,* 470 F.3d at 695, or required the same level of skills. *See Cullen,* 338 F.3d at 699.

### 2. Ken Bollinger

Based on the undisputed facts, Ken Bollinger is the Vice President of Sales – Plastics and handles Bulkmatic's plastic accounts. (Defs.' Stmt. Facts ¶ 49.) The skills required for Bollinger's position include understanding the differing grades of plastic, plastic shipping requirements, and different truck cleaning requirements for the shipment of plastics. (*Id.* ¶¶ 12, 50.) Bollinger is also responsible for overseeing Bulkmatic's services agreement with a client in Ohio at a facility involving truck and rail care cleaning, among other operations. (*Id.* ¶ 49.) Bollinger has a Bachelor of Science degree in Mechanical Engineering. (*Id.* ¶ 48.)

Bowbin's position, however, did not require any experience or background in the bulk transportation of plastic. Again, her responsibilities in food-grade transportation included bringing in new business, maintaining existing business, negotiating rates with the help from her superiors, responding to customer service issues, and helping the operations group develop customer solutions. Based on the undisputed facts, because the skills and responsibilities for Bollinger's and Bowbin's positions significantly differ, these positions do not have the same core of common tasks. *See Merillat*, 470 F.3d at 695; *see also Cullen,* 338 F.3d at 698. Furthermore, these positions are substantially different in terms of skill, effort, and responsibility, especially the need for an expertise in plastics in Bolling's position as Vice President of Sales – Plastics. *See Cullen,* 338 F.3d at 699. In sum, viewing the facts in a light most favorable to Bowbin, there is no genuine issue of material fact that she and Bollinger

performed equal work requiring equal skill, effort, and responsibilities.  *See Boumehdi*, 489 F.3d at 793.

### 3.    Horst Gwinner

Horst Gwinner is the International Director of Global Bulk Logistics and is the only sales representative who handles international plastic and mineral sales via container.  (Defs.' Stmt. Facts ¶ 54.)  Shipping by container involves a different process than typical truck transportation in which Bowbin had experience.  (*Id*. ¶¶ 14, 54.)  Gwinner, on the other hand, has training and experience in international shipping rules and ports and is also bilingual.  (*Id*. ¶¶ 14, 55.)  Also, Gwinner trains drivers on how to use the container delivery system.  (*Id.* ¶ 54.)

Bowbin's job did not involve international sales or container sales.  (*Id*. ¶ 15.)  In addition, she did not train drivers or travel abroad in her sales position at Bulkmatic.  (*Id*. ¶¶ 6, 15.)  Furthermore, Bowbin's position did not require skills in understanding international transportation laws or experience with international ports and shipping.  (*Id*. ¶¶ 6, 15.)  Viewing the undisputed facts in a light most favorable to Bowbin, there is no genuine issue of material fact that Bowbin's and Gwinner's positions had a common core of tasks.  *See Merillat,* 470 F.3d at 695.  Moreover, Bowbin's and Gwinner's position involved a completely different skill set. *See Cullen,* 338 F.3d at 699.

### 4.    Pete Miller

Peter Miller is a Vice President of Sales, which requires Miller to sell bulk transportation of plastics, involving a different skill set, experience, and training than Bowbin's food-grade sales position.  (*Id.* ¶ 58.)  Also, Miller prepares revenue reports and spreadsheets.  (*Id.*)  Miller has the required experience of arranging transportation across the Canadian and Mexican

borders, as well.  (*Id.*)  Miller has a four-year Bachelor of Commerce degree and 27 years of sales experience.  (*Id*. ¶ 57.)  Taking the facts in Bowbin's favor, she has failed to raise a genuine issue of material fact Miller's position had the same common core of tasks as her position or that their positions were substantially similar in terms of skill, effort, and responsibility.  *See Merillat*, 470 F.3d at 695; *Cullen,* 338 F.3d at 699.

### 5. Cornelius Parks

Cornelius Parks was the Vice President of Sales – Edibles until he resigned in May 2005. (*Id*. ¶ 8.)  Parks had ten years of sales experience at Bulkmatic and had taken management courses at Purdue University.  (*Id.* ¶ 60.)  As part of his job responsibilities, Park was in charge of flour sales.  (*Id*. ¶ 61.)  He also helped Bulkmatic track past-due accounts and collect on those accounts.  (*Id*.)  Moreover, Parks had the ability and skills to negotiate rates with his customers, whereas it is undisputed that Bowbin did not have these skills.  (*Id*. ¶ 66.)  Although Parks' and Bowbin's positions shared a common core of tasks, especially as they pertained to the flour accounts, their job responsibilities varied, including Parks' ability to negotiate rates with his customers.  Further, Parks had more experience in sales than Bowbin.  (*Id.* ¶ 60.)  Construing the facts and all reasonable inferences in favor of Bowbin, Parks' position was substantially different in terms of skill and experience that her position.  *Cullen,* 338 F.3d at 399.

Meanwhile, Bowbin's and Parks' pay differential was small.  *See Sims-Fingers v. City of Indianapolis,* 493 F.3d 768, 771 (7th Cir. 2007) ("The smaller the differential, the more likely it is to be justified by a small difference in work.").  In fact, Bowbin's salary surpassed Parks' salary during Bowbin's employment with Bulkmatic, which undermines the first element of Bowbin's Equal Pay Act claims when using Parks as a comparator.  (Defs.' Stmt. Facts ¶¶ 24-27,

62, 64.)

In sum, viewing the evidence and all reasonable inferences in Bowbin's favor, she has failed to set forth any evidence creating a genuine issue of material fact that she and her male colleagues performed equal work that required equal skills, effort, and responsibility. *See Merrillat,* 470 F.3d at 695. As the Seventh Circuit recently explained, "[t]he proper domain of the Equal Pay Act consists of standardized jobs in which a man is paid significantly more than a woman (or anything more, if the jobs are truly identical) and there are no skill differences." *Sims-Fingers,* 493 F.3d at 772-73. Because Bowbin has failed to establish the second prima facie element of her Equal Pay Act claims, the Court need not consider the third element, namely, whether the work was performed under similar working conditions. *See id.*

### C. Bulkmatic's Affirmative Defense

Even if Bowbin were to establish a prima facie case under the Equal Pay Act, Bulkmatic has set forth undisputed evidence that its salary decisions were based on factors other than sex. *See Boumehdi,* 489 F.3d at 793-94; *see also* 29 U.S.C. § 206(d); 820 ILCS 112/10(a). More specifically, Bulkmatic presents undisputed evidence that when determining compensation levels, the Senior Vice President of Sales, Larry Smith, considered many factors, including experience in the industry and in a sales capacity, current compensation, the market rate for similar positions, compensation of other employees in similar positions, level of responsibility, the applicant's level of skill, the amount of travel required, interaction with internal employees and external customers and venders, and educational background. (*Id.* ¶ 21.)

Here, Bulkmatic has presented undisputed evidence that Bowbin's male colleagues have more experience in sales and bulk transportation than Bowbin and that they have unique skills

for which Bulkmatic hired them. *See Boumehdi,* 489 F.3d at 794. Boardman, for instance, has 29 years of experience in the bulk transportation industry and was previously the president of his own transportation company that Bulkmatic acquired. (Defs.' Stmt. Facts ¶ 43.) Prior to his job at Bulkmatic, Bollinger had 26 years of experience in upper-level sales positions at Monsanto. (*Id.* ¶ 48.) Gwinner has over 10 years of sales and logistics experience in the transportation industry and Parks had ten years of food-grade sales experience with Bulkmatic. (*Id.* ¶ 53.) Also, Miller had 27 years of sales experience when Bulkmatic hired him. (*Id.* ¶ 58.) On the other hand, Bowbin had only five years' of experience working with food-grade bulk shippers. (*Id.* ¶ 42.) Indeed, her position at Bulkmatic was her first job in which sales was her primary responsibility. (*Id.* ¶ 41.)

Bulkmatic also sets forth specific undisputed evidence that it took its employees' tenure at the company into account when determining their salaries. (*Id.* ¶¶ 21, 52, 56.) In setting Parks' pay, for example, Larry Smith took into account Parks' ten years of service with Bulkmatic and Parks' knowledge of its operations and accounts. (*Id.* ¶ 63.)

Based on this undisputed evidence, Bulkmatic has established the affirmative defense that its salary decisions were based on factors other than sex. *See Merillat*, 470 F.3d at 697. The Court therefore grants Bulkmatic's summary judgment motion as to Bowbin's Equal Pay Act claims in Counts II and III of her Complaint.

## **CONCLUSION**

For the foregoing reasons, the Court grants the Defendant's Motion for Summary

Judgment.

Dated:   November 13, 2007

**ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**